## Bell v. Bell et al.

June 3, 1941.

.8

Joe S. Feather and J. B. Johnson for appellant.
H. H. Owens, Thos. F. Young and W. B. Early for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The purchaser of property sold under order of court appeals from a judgment overruling his exceptions to the report of sale. The primary question is the right of the court to sell the property. Subsidiary questions, however, are of importance.

Mrs. Bertha E. Holloway owned a corner lot in Corbin with a brick residence fronting on Fifth street and a frame residence back of it fronting on Kentucky Avenue. The entire property was under mortgage for the principal sum of $2,500 remaining unpaid of a $3,500 debt. By will Mrs. Holloway directed and empowered her executrix to sell the frame residence for the payment of debts. She devised all of her property (1) to her sister, Samantha Bell, for life; (2) after her death to her nephew, Floyd Eldridge, for life; and (3) after his death in fee to six nieces and nephews by name. This suit was instituted by both life tenants and three of the remaindermen against the bank holding the mortgage, and the other three remaindermen, two of whom are infants, and the other an unlocated non-resident. The petition prayed a settlement of the estate, the sale of the property for the payment of debts, and the apportionment of a balance of the proceeds to the life tenants according to the present value of their respective estates, and the residue divided among six remaindermen. It was also alleged that Samantha Bell had personally paid $1,600 to the bank on the mortgage debt and she asked to be subrogated to that extent. A guardian ad litem for the infant defendants, Elizabeth Baker and Juanita Martin, and a warning order attorney for the non-resident, Carter Eldridge, filed answer and report to the effect that he could make no defense. On January 25, 1941, judgment was rendered directing (1) the sale of the frame residence property because authorized by the will for the payment of debts, but (2) if it should not bring a sufficient sum then the sale of the brick residence and the application of a sufficient sum of the proceeds to pay the debts and costs. It was further adjudged that the balance be held pending further order of the court. The judgment went further and provided that should the sale of the frame residence yield enough to pay the debt, then the interests of the two life tenants and the fee of the three remaindermen, who were plaintiffs, should be sold because they had petitioned it; but such sale should leave intact the interests of the two infants. It is recited as a criterion for division that the first life

tenant, Samantha Bell, was 44 years old, with an expectancy of 24.35 years, and that she is entitled to 22:21% of the net proceeds; that the second life tenant, Floyd Eldridge, was 29 years old and on the expected death of the first taker he would be 53.35 years old, with an expectancy at that time of 19.2 years and entitled to 18.19% of the net proceeds. But the judgment does not declare that a division should be made upon that or any other basis. After adjudging the bank and Mrs. Bell a lien for their debts and its satisfaction, the judgment directs the Master Commissioner to sell the frame residence and if it does not bring enough to pay the debt to sell the brick residence. It seems that the word "not" has been inadvertently omitted from this provision, and it was intended to provide that the brick house should not be sold if the frame residence brought enough, for the judgment directs that if that should "not happen" then the commissioner shall sell the entire property, offering each lot separately, then the two as a whole. Later on it is provided that in the event the frame building and lot does bring enough to satisfy the mortgage debt and costs, then the commissioner should sell the entire fee in that property. It is further provided that he should sell the interests of the two life tenants and all three remaindermen in the brick residence. There are some other provisions making the judgment ambiguous.

Thereafter the statutory guardian of the two infant defendants filed an answer, counterclaim and cross petition alleging facts showing the necessity of selling the remainder interest of the wards in the entire property for their maintenance and education. It was averred that under the rule of computing expectancy of life tenants, each of the infant remaindermen would be 62 years old before they would come into possession of their undivided interests in the property. The guardian prayed that the interests of the children be sold and that the present cash value be paid the guardian for the purposes stated. Without any of the cross defendants being brought before the court or filing answer, a supplemental judgment was rendered finding the need for a sale of the infants' share as prayed (depositions proving the same having been taken) and modifying the original judgment purporting to add their interests to the interests of the three plaintiff remaindermen in the order of sale. As the judgment thus stood, it was re-

garded as retaining in the property the undivided remainder interest of the non-resident defendant, Carter Eldridge, unless the sale should be made to pay the debts of the testator.

The commissioner's report of sale was only that after advertising the sale "as directed in said judgment," he sold to Roy Bell, as the highest bidder for $9,950, "the same property described in the judgment, notice of sale and appraisement in the above styled action;" and that the purchaser had executed bonds as conditioned in the judgment. A copy of the notice of sale filed with the report shows the property to be sold "to realize the sum of $2300.00, with interest from August 21, 1937," which is not the amount of the debt or the date from which interest should be calculated as adjudged. This advertisement is very confusing and the reader would not know what was being sold in certain events nor the events themselves. After a general description of the entire lot embracing both houses, it is stated:

"However, should such purchaser be found, then I will sell the life interest of the two life tenants, Samantha Bell and Floyd Eldridge, in the first described lot and with one-half remainder of plaintiffs, Roy N. Eldridge, Lola Martin Gillespie and Garnett Martin Fields, but not the remainder interest of Carter Eldridge, Elizabeth Baker or Juanita Martin."

The court should have required a proper and sufficient report of sale by the Master Commissioner. That which was filed does not show whether both parcels were sold or how they were sold or what property was sold. If the sale of all the property was not necessary for the payment of debt, then the interest of the two infants was not sold, for the judgment decreeing it for the purpose of their maintenance and education had been entered on the same day the sale was had and, of course, without advertisement as defined in the statute. Kentucky Statutes, sec. 14a-1. It could not be and was not sold. This was one of many grounds of exceptions to the sale but on the appeal it is apparently abandoned, the purchaser being anxious to have the sale confirmed and his title declared to be good. The error affecting the rights of the infants is so flagrant we cannot

ignore it. Therefore, this part of the judgment is reversed with directions to set aside the sale.

The judgment as modified is manifold. It is proper in directing the sale of the frame house first for the payment of debt because authorized by the will, and in ordering the sale of both houses if the first does not yield a sufficient sum. And we think the court had power to grant the prayer of the statutory guardian of the infant defendants for the commutation of their interests and they may be regarded along with all the other parties, except the absent non-resident. As we held in Miracle v. Miracle, 260 Ky. 624, 86 S. W. (2d) 536, 102 A. L. R. 964, a life tenant and some of the remaindermen owning a fund arising from proceeds of the sale of land may not have commutation and receive the present value of their respective interests without the consent or agreement of all remaindermen; nor can a remainderman compel the life tenant to take the commuted value of his interest. This judgment is subject to the construction of decreeing otherwise, and to the extent that it affects the undivided one-sixth interest in remainder belonging to the absent defendant, Carter Eldridge, it is erroneous. It would be proper to take out one-sixth of the proceeds and adjudge the life tenants the income therefrom, the judgment providing for investment on proper security for the payment thereof to him upon the termination of the life estates. We see no objection to dividing the five-sixths among the parties as asked.

Upon the same principle the court was not authorized to sell the brick residence solely for a division of the proceeds. It would be authorized to sell all interests but that of Carter Eldridge, which must remain in the property until he shall dispose of it.

While the purchaser might not complain, since the infants are involved it seems well to express the opinion that the division of the proceeds among the two life tenants and the five remaindermen is not according to our view. At the time the judgment was rendered the younger life tenant was 29 years old and had an expectancy of 30.66 years, and the older life tenant was 44 years old with an expectancy of 24.35 years, the remaindermen having the right to expect the possession of the property at the end of the longer period, that is, 30.66 years, so that the calculations should be made

upon that basis and not upon the basis of 62 years as decreed.

The report of the warning order attorney is not technically correct, for it does not state that he advised the non-resident defendant of the nature and pendency of the action, although it is susceptible of the interpretation that he undertook to send him a copy of the petition. Under the circumstances, it would be well for the attorney to undertake again to locate the defendant and file a new report.

Upon the whole case it seems to us that not only should exceptions to the report of sale have been sustained, but that the judgment itself should be reversed and another entered in accordance with the views herein expressed.

Judgment reversed.